**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| GILLHAM LLC<br>251 Little Falls Drive<br>Wilmington, DE 19808<br>Petitioner,<br><br>v.<br><br>THE KYRGYZ REPUBLIC<br>Ministry of Foreign Affairs<br>57 Erkindik Boulevard<br>Bishkek, 720040<br>Kyrgyz Republic<br>Respondent. | **Civil Action No.** 20-cv-01795 |

**PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

Petitioner Gillham LLC ("**Petitioner**"), by and through its undersigned counsel, hereby petitions this Court for an order pursuant to 9 U.S.C. § 207 (i) confirming and recognizing the final arbitral award (the "**Award**") rendered on August 20, 2019 in an arbitration between Stans Energy Corporation ("**Stans**") and Kutisay Mining LLC ("**Kutisay**") on one hand, and Respondent the Kyrgyz Republic ("**Kyrgyzstan**" or "**Respondent**") on the other, pursuant to the Law of the Kyrgyz Republic on Investments in the Kyrgyz Republic of March 27, 2003 (the "**2003 Investment Law**") and the United Nations Commission on International Trade Law Rules of Arbitration of 1976 (the "**UNCITRAL Rules**"); (ii) entering judgment in Petitioner's favor and against Kyrgyzstan in the amount of the Award with pre- and post-award interest and costs as provided therein and as authorized by law, plus the costs of this proceeding; and (iii) awarding Petitioner such other and further relief as this Court deems just and proper. A true and correct copy of the Award is attached as **Exhibit A** to the Declaration of Charlene C. Sun, dated July 1, 2020 ("**Sun Decl.**").

## Parties, Jurisdiction and Venue

1. Petitioner brings this summary proceeding under the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "**New York Convention**") and Chapter 2 of the Federal Arbitration Act ("**FAA**"), 9 U.S.C. §§ 201 *et seq.*, to confirm the Award.

2. Stans Energy Corporation is a publicly-traded company incorporated under the laws of Ontario, Canada, having its principal place of business at 1 Yonge Street, Unit # 1011, Tonoto, Ontario, M5E 1E5, Canada.

3. Kutisay Mining LLC is a limited liability company and is incorporated in Kyrgyzstan. Kutisay Mining LLC is a wholly owned by Stans Energy through its wholly owned subsidiary Stans KG. Its principal place of business is at Chui Oblast, Kemin Region, Ak-Tyuz village, Administrative Building of the Kyrgyz Republic and its postal address is Akhunbaeva Street, 42 A, Bishkek, 720064, Kyrgyzstan.

4. On March 25, 2020, Stans and Kutisay entered into an agreement to assign their rights in the Award – including the right to judicially enforce the Award – to three entities, including Petitioner Gillham LLC (the "**Assignment Agreement**").[1] A true and correct copy of the Assignment Agreement is attached as **Exhibit C** to the Sun Declaration. Under the Assignment Agreement, Stans and Kutisay "unconditionally and irrevocably assign[ed]" the "award issued by the tribunal in favor of the Stans Entities in *Stans Energy Corp. and Kutisay Mining LLC v. The Kyrgyz Republic*, PCA Case No. 2015-32" to Petitioner. Sun Decl., Exh. C at 1. Further, pursuant

[1] In addition to Petitioner, Lucille Investments LLC and Stonebury Limited were assigned rights to the Award. *See* Sun Decl., Exh. C at 1. These entities have authorized Gillham to conduct these proceedings and to enforce the Award on their behalf. Sun Decl. ¶ 4.

to the Assignment Agreement, Petitioner "ha[s] all rights to enforce the Award . . . and collect any and all amounts owed to [Stans and Kutisay] as a result of the Award." *Id.*

5. Respondent is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("**FSIA**"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d), 1602-611.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a) and personal jurisdiction over Kyrgyzstan pursuant to 28 U.S.C. § 1330(b).

7. Specifically, 28 U.S.C. § 1605(a)(6) provides that a foreign state is not immune with respect to any claim against it that seeks recognition of an arbitration award made pursuant to an agreement to arbitrate if the "agreement or award may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards[.]" 28 U.S.C. § 1605(a)(6)(B).  This Court therefore has subject matter jurisdiction over this matter, which seeks recognition of a foreign arbitral award falling under the New York Convention, pursuant to 28 U.S.C. § 1330(a).

8. Venue is proper in this district pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 13919(f)(4).

## The Arbitration Agreement

### A. Kyrgyzstan's Agreement to Arbitrate

9. The arbitration agreement between Stans and Kutisay and Kyrgyzstan consists of two elements: (i) Kyrgyzstan's consent contained in Article 18 of the 2003 Investment Law; and (ii) Stans's and Kutisay's consent contained in their Request for Arbitration.

10. Article 18 of the 2003 Investment Law contains Kyrgyzstan's consent to submit to international arbitration all "investment disputes" with "foreign investors."  A true and correct English translation of the 2003 Investment Law is attached as **Exhibit B** to the Sun Declaration.

11. Article 18 of the 2003 Investment Law provides that in the absence of an alternative agreement between an investor and Kyrgyzstan, one of the parties may ask for arbitration by submitting the dispute to "arbitration or an international ad hoc tribunal formed in accordance with the arbitration rules of the United Nations Commission on International Trade Law." Sun Decl., Exh. B, Art. 18(2)(b).

12. Stans and Kutisay and Kyrgyzstan had no alternative agreement concerning dispute resolution. Accordingly, Kyrgyzstan provided its written consent to arbitration in Article 18 of the 2003 Investment Law.

**B. Stans's and Kutisay's Consent to Arbitrate**

13. As the Tribunal found in the Award, both Stans and Kutisay were "foreign investors" within the meaning of Article 1(3) of the 2003 Investment Law. *See* Sun Decl., Exh. A, ¶¶ 418-420, 444-447 (finding that Stans Energy and Kutisay Mining LLC are investors under the 2003 Investment Law).

14. As the Tribunal further found, Stans's and Kutisay's claims against Kyrgyzstan constituted "investment disputes" under the 2003 Investment Law. *Id.* ¶¶ 357-360.

15. Because there was no alternative agreement between Stans and Kutisay and Kyrgyzstan, in accordance with Article 18 of the 2003 Investment Law, on May 13, 2015, Stans and Kutisay submitted the dispute to "arbitration or an international ad hoc tribunal formed in accordance with the arbitration rules of the United Nations Commission on International Trade Law," Sun Decl., Exh. B, Art. 18(2)(b), by serving a Notice of Arbitration on Kyrgyzstan, thereby perfecting the agreement to arbitrate. A true and correct copy of the Notice of Arbitration is attached as **Exhibit D** to the Sun Declaration.

**Summary of the Dispute**

16. Stans's and Kutisay's case arises out of a series of cumulative and interconnected measures enacted by Kyrgyzstan that harmed Stans's and Kutisay's investment in two mines for the extraction of so-called rare earth elements ("**REE**s") in the Kyrgyz Republic.

17. Beginning in 2005, Stans made various investments in Kyrgyzstan beginning with investments in the Kyrgyz uranium sector. In March 2006, Stans incorporated a local subsidiary in Kyrgyzstan, Stans KG, to hold Stans's assets, including its licenses for the uranium properties. Under Kyrgyz law, only Kyrgyz companies may hold licenses, assets, and conduct business in Kyrgyzstan. *See* Sun Decl., Exh. A, ¶ 175.

18. Stans later chose to invest in the REEs sector, following advice from the Former Deputy Director of the Geology and Investment Department of the Kyrgyz State Agency for Geology and Mineral Reserves. These investments included bidding for and obtaining licenses to mine the Aktyuz Ore Field where the Kutessay II rare earth deposit ("**Kutessay II**") and the Kalesay beryllium deposit ("**Kalesay**") were located. *Id.* ¶ 179.

19. On December 21, 2009, Kutisay and the Kyrgyz authorities signed a first license agreement setting forth how mining activities were to be conducted. *See id.* ¶ 213.

20. In August 2010, Stans met with the new Minister of Natural Resources to discuss the need to re-issue the Kutessay II and Kalesay licenses to Stans's newly registered entity Kutisay Mining LLC and to conclude new license agreements with it. The parties reached an agreement and a second license agreement was signed on September 20, 2010. *Id.* ¶¶ 232-233.

21. Beginning in early 2012 Stans began discussing the creation of a public-private partnership with Kyrgyzstan with respect to the Kutessay II and Kalesay projects. *See id.* ¶¶ 258-266. On June 15, 2012 the parties agreed on a partnership in principle and entered into the

Kutessay II License Agreement No. 3. Under that agreement, the parties were to reach a preliminary agreement for the transfer of shares in Kutisay by July 31, 2012, and reach an agreement on the precise terms of the share transfer by September 30, 2012. *Id.* ¶¶ 269, 268.

22. During this period, however, Kyrgyzstan began adopting measures regarding the licenses which deprived Stans and Kutisay of the effective use and control of their investment, amounting to an indirect *de facto* expropriation. These measures included:

- **The June 26, 2012 Resolution.** On June 26, 2012 a Parliamentary Committee for the Development of Industries of the Economy issued a resolution ordering the Kyrgyz State Agency of Geology and Mineral Resources (the "**SAGMR**") to cancel the Kutessay II License Agreement No. 3, and to set up a timeline for the Kutessay II license to be placed for auction. *Id.* ¶ 282. According to this resolution, the Kutessay II License Agreement No. 3 was in breach of the Kyrgyz Subsoil Law and Kutisay Mining had failed to comply with the terms and conditions of the two prior licensing agreements. *Id.* ¶ 282. While the resolution was not formally implemented and the SAGMR did not comply with it, it nonetheless impacted Stans Energy's market capitalization. *See id.* ¶ 287.

- **The Thirty-Days' Work Suspension Order.** The Kutessay II License Agreement No. 3 required Stans to enter into a preliminary agreement with Kyrgyzstan regarding the transfer of shares in Kutisay Mining LLC to the State Property Management Fund by July 31, 2012. Stans sent a preliminary draft agreement on July 16, 2012. *Id.* ¶ 289. Receiving no response, Stans wrote a follow-up letter to the authorities on July 27, 2012 and again on July 31, 2012. *Id.* Stans received no response. *Id.* Stans then wrote to the Kyrgyz authorities on August 29, 2012 and included a sealed and stamped version of the preliminary share transfer agreement, and reminded the government of the impending September 30, 2012 deadline to reach a final agreement on the share transfer. *Id.*

  On August 30, 2012, the Subsoil Use Licensing Commission of the SAGMR issued a suspension and subsequent stop-work order concerning the Kutessay II License Agreement No. 3 for thirty days (i.e., until September 30, 2012). *Id.* ¶ 291. Stans objected to the legality of the suspension and stop-work order, and commenced litigation before the Bishkek Inter-District Court on September 10, 2012. *Id.* ¶ 292. On October 16, 2012 the Court ruled on the issue, siding with Stans and holding that the work suspension order was invalid. *Id.* ¶ 298.

23. Stans and Kutisay continued very limited work on the deposits sites, and in January 2013 sent the Kyrgyz authorities updates regarding necessary repairs to comply with environmental safety standards and its 2013 work program. This work program was rejected by the Kyrgyz authorities, which on March 12, 2013 ordered the suspension of operations. This

suspension was purportedly based on Kutisay's alleged failure to comply with environmental safety standards and the need to allow the Kyrgyz authorities to investigate the validity of Stans's and Kutisay's rights to the licenses.

24. On March 28, 2013, with its operations shut down, Stans and Kutisay sent a notice of dispute to the Kyrgyz authorities pursuant to Article 18 of the 2003 Investment Law, concerning alleged breaches of its rights regarding Kutessay II and Kalesay.

25. Following this notice, several judicial and arbitration proceedings took place concerning the validity of Stans's and Kutisay's licenses.

- **The Prosecutor General's Case before the Inter-District Court of Bishkek.** On April 4, 2013 the Prosecutor General brought a case before the Inter-District Court of Bishkek asking it to invalidate the December 21, 2009 minutes, which ultimately led to Stans's and Kutisay's obtaining the licenses. On April 15, 2013 the Inter-District Court granted an injunction prohibiting anyone – including Kutisay and the SAGMR – from taking any action with respect to the licenses, and on May 29, 2013, declined to hear an appeal on the issue. *Id.* ¶¶ 319-320. Since that time, no work has been conducted at Kutessay II and Kalesay. *Id.* ¶ 320. On March 19, 2014 the Court issued a decision invalidating the December 21, 2009 minutes. *Id.* ¶ 321. This decision was appealed, and upheld by the Bishkek City Court on July 30, 2014, and the Supreme Court of Kyrgyzstan on March 24, 2015. *Id.* ¶ 322.

- **Baotou's Case Before the Inter-District Court of Bishkek.** Baotou (a competitor of Stans and Kutisay) purchased the remaining shares in Central Asia Metals Group in January 2013, becoming its sole owner. *Id.* ¶ 324. Baotou then filed a claim against the SAGMR and asked the Inter-District Court of Bishkek to invalidate the SAGMR's December 21, 2009 minutes which led to Stans's and Kutisay's obtaining the licenses. *Id.* ¶ 325. On June 11, 2013 the court decided in favor of Baotou but this decision was overturned by the Bishkek City Court, which found, *inter alia,* that Baotou lacked standing and that the claim was time-barred. *Id.* ¶¶ 326-327.

- **Stans's and Kutisay's Arbitration before the Moscow Chamber of Commerce and Industry**. On October 30, 2013, Stans and Kutisay filed a Statement of Claim in an international arbitration before the Moscow Chamber of Commerce and Industry (the "**MCCI**"). *Id.* ¶ 328. In April 2014 that tribunal issued an award ordering the Kyrgyz Republic to pay Stans and Kutisay in excess of US$ 118 million. *Id.* ¶ 330. But on May 25, 2015 the Moscow Arbitrazh Court set aside the MCCI award on the basis that the MCCI lacked jurisdiction under the Moscow Convention. *Id.* ¶ 333.

26. On October 17, 2014 the SAGMR issued minutes terminating Kutisay's Licenses based on the Kyrgyz courts' decisions in the case brought by the Prosecutor General. *Id.* ¶ 334. Kutisay filed a claim with the Inter-District Court of Bishkek seeking invalidation of the October 17, 2014 Minutes. *Id.* The Court dismissed the claim based on the prior Kyrgyz decisions invalidating the December 21, 2009 Minutes. *Id.* The Bishkek City Court and Supreme Court of Kyrgyzstan upheld this decision on January 27, 2015 and October 15, 2015 respectively. *Id.* ¶ 336.

**The Arbitration**

27. Stans and Kutisay commenced the arbitration by serving a Request for Arbitration on Kyrgyzstan on May 13, 2015. The Request for Arbitration invoked Article 18(2)(b) of the 2003 Investment Law, which permits the submission of disputes falling within its scope to arbitration before an international ad hoc tribunal formed in accordance with the UNCITRAL Rules.

28. In the arbitration, Stans and Kutisay alleged that Kyrgyzstan's actions resulted in an unlawful expropriation of their investments and failed to provide them fair and equitable treatment.

29. The arbitration was seated in London and proceeded in accordance with the UNCITRAL Rules, as provided by the 2003 Investment Law. The arbitral tribunal consisted of the Honorable Colin L. Campbell, Q.C. (appointed by Stans and Kutisay), Mr. Stephen Jagusch, Q.C. (appointed by Kyrgyzstan), and Professor Karl-Heinz Böckstiegel (President, appointed jointly by the parties).

30. Kyrgyzstan was represented by counsel in the arbitration by attorneys from Satarov, Askarov & Partners, King & Wood Mallesons, and the Center for Court Representation of the Government of the Kyrgyz Republic. Kyrgyzstan participated in all aspects of the arbitration: Kyrgyzstan submitted a Request for Bifurcation, an Application for Security, a Submission on

Jurisdiction, a Reply on Jurisdiction, a Statement of Defence on the Merits and Memorial on Jurisdiction, and a Rejoinder on the Merits and Reply on Jurisdiction. Kyrgyzstan also submitted witness statements and expert reports in support of its pleadings.

31. The tribunal conducted a hearing on jurisdiction on September 23, 2016 in Paris, France, during which the tribunal heard testimony from each party's expert witnesses. At this hearing, the tribunal addressed the following jurisdictional questions:

> (1) whether the 2003 Investment Law contains the Respondent's consent to arbitrate; (2) whether that legislation must be interpreted in such a way that one of the Claimants, Kutisay Mining LLC, would not have satisfied the consultation requirement of that legislation; (3) whether that legislation contains a so-called "fork-in-the-road" clause and, if so, whether it has been triggered; (4) whether the Kyrgyz Republic (as opposed to one of its "authorised government bodies") is the right respondent in arbitration proceedings; and (5) whether "investment disputes" pursuant to that legislation are limited to disagreements "arising in the course of the sale" of an investment.

Sun Decl., Exh. A, fn. 56.

32. In a jurisdictional award issued on January 25, 2017, the tribunal unanimously found in favor of Stans and Kutisay with respect to each of these jurisdictional issues.[2] The tribunal left for the merits whether Stans and Kutisay qualified as investors holding investments.

33. After Kyrgyzstan's first four objections to the tribunal's jurisdiction were rejected, Kyrgyzstan presented six additional objections to the tribunal's jurisdiction, namely that: (i) the tribunal's jurisdiction was limited to the substantive provisions of the 2003 Investment Law and that other international treaties and general international law did not form a part of the applicable law for the arbitration; (ii) Stans did not qualify as an investor with a qualifying investment; (iii)

---

[2] On February 22, 2017 Kyrgyzstan applied to the High Court in London seeking to set-aside the Jurisdiction award. Sun Decl., Exh. A, ¶ 69. On October 13, 2017 the High Court of England and Wales dismissed Kyrgyzstan's case. *Id.* ¶ 74.

Kutisay did not qualify as an qualifying foreign investor; (iv) Stans and Kutisay obtained their investment through corruption; (v) Stans and Kutisay obtained their investment in breach of Kyrgyz law; and (vi) Stans and Kutisay brought their claims in bad faith.

34. The tribunal held its hearing on the merits and on any remaining jurisdictional objections from April 9-13, 2018 in Paris, France.  During the hearing, the tribunal heard testimony from the parties' expert and factual witnesses.

35. The tribunal issued its Final Award on August 20, 2019.  The tribunal rejected each of Kyrgyzstan's additional jurisdictional objections, finding:

- First, Article 1(6) of the 2003 Investment Law is broad and covers "any dispute" and so there is "no ground for restricting jurisdiction to only disputes under the substantive provisions of the 2003 Investment Law." *Id.* ¶ 306.

- Second, Stans was a qualifying investor with a qualifying investment because the definition of "investment" under the 2003 Investment Law included both direct and indirect investment. *Id.* ¶¶ 419-420.

- Third, Kutisay Mining LLC was a qualifying foreign investor, because it was wholly owned by Stans, a Canadian company, through its wholly owned subsidiary Stans KG. *Id.* ¶ 444.

- Fourth, the evidence did not support a finding that corrupt acts occurred and Kyrgyzstan did not satisfy its burden of proof to show corruption. *Id.*

- Fifth, the 2003 Investment Law did not make compliance with Kyrgyz law a jurisdictional question, but was broad enough to permit the tribunal to adjudicate alleged breaches of Kyrgyz law as well. *Id.* ¶¶ 541, 543.

- Sixth, Kyrgyzstan had not presented any evidence that, even if Stans's and Kutisay's claims were found to have been brought in bad faith, this would divest the tribunal of its jurisdiction. *Id.* ¶ 549.

36. On the merits, the tribunal unanimously found that Kyrgyzstan had expropriated Stans's and Kutisay's investment in violation of Article 6(1) of the 2003 Investment Agreement and had also failed to treat Stans's and Kutisay's investment fairly and equitably in breach of Article 4(4) of the 2003 Investment Agreement.

37. The Award found Kyrgyzstan liable to Stans and Kutisay in the amount of US$ 15,027,081.89, plus pre- and post-award interest at a rate of 5%, compounded annually from October 16, 2014 until full and final satisfaction of the Award. The tribunal ordered Kyrgyzstan to pay to Stans and Kutisay two thirds of the costs of the Arbitration and of Stans's and Kutisay's legal costs (totaling US$ 3,137.17, C$ 16,47.14, and € 796,303.86), plus post-award interest at a rate of 5% interest, compounded annually from the date of the Award until full and final payment. This Petition seeks recognition of the Award by this Court.

38. Despite having appealed the jurisdictional award, Kyrgyzstan has not sought to appeal the Award. *See* Sun Decl., ¶ 2. Pursuant to Article 70(3) the English Arbitration Act of 1996, Kyrgyzstan's deadline to appeal the Award has passed.[3]

**Cause of Action**

39. Petitioner repeats and realleges the allegations in paragraphs 1 through 38 as if set forth fully herein.

40. The arbitration agreement set forth herein at paragraphs 28 through 38 constitutes "an agreement in writing" within the meaning of Article II(2) of the New York Convention.

41. The Award arose out of a legal relationship that is commercial within the meaning of 9 U.S.C. § 202.

42. The Award was made in the United Kingdom, a nation that is a signatory to the New York Convention, and which is a State other than the State where recognition and enforcement is sought hereby.

43. Canada and Kyrgyzstan are also each signatories to the New York Convention.

[3] *See* English Arbitration Act (1996), art. 70(3), *available at* http://www.legislation.gov.uk/ukpga/1996/23/data.pdf (explaining that an appeal to challenge an award based on, the tribunal's alleged lack of jurisdiction, an alleged "serious irregularity" in the award, or a legal error, must be brought within 28 days of the date of the award.).

44. The Award is final and binding within the meaning of the New York Convention and Chapter 2 of the FAA.

45. None of the grounds for refusal or deferral of the Award set forth in the New York Convention apply.

46. The Award is required to be recognized, and judgment entered thereon, pursuant to the New York Convention and 9 U.S.C. § 207.

WHEREFORE, Petitioner prays:

(a) That the Court enter an order pursuant to 9 U.S.C. § 207 recognizing the Award against Kyrgyzstan; and

(b) That, on the basis of the Award, the Court enter a judgment that Kyrgyzstan is liable to Petitioner in the amount of (i) US$ 15,027,081.89 plus pre- and post- Award interest at a rate of 5% compounded annually from October 16, 2014 until the date that of payment; and (ii) two thirds of the reasonable costs incurred by Stans and Kutisay in the Arbitration and two thirds of the costs of legal representation and assistance incurred by Stans and Kutisay totaling US$ 3,137,887.17, C$ 16,472.14 and € 796,303.86, plus post-Award interest at a rate of 5% compounded annually from the date of the Award until the date of payment; and

(c) That Petitioner be awarded such other and further relief as may be proper.

Dated: New York, New York
July 1, 2020

Respectfully submitted,

*/s/* James E. Berger

James E. Berger (D.C. Bar 481808)
Charlene C. Sun (D.C. Bar 1027854)

                      KING & SPALDING LLP
                      1185 Avenue of the Americas
                      New York, NY 10036-4003
                      Tel: (212) 556-2100
                      Fax: (212) 556 -2222
                      jberger@kslaw.com
                      csun@kslaw.com
                      *Attorneys for Petitioner*