UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

GILLHAM LLC.

                Petitioner,

v.                              Civil Action No. 1:20-cv-01795-ABJ

THE KYRGYZ REPUBLIC

                Respondent.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>PETITIONER'S MOTION FOR DEFAULT JUDGMENT</u>**

**Table of Contents**

I. Preliminary Statement..................................................................................................1

II. Factual Background....................................................................................................2

    A. Stans and Kutisay and Kyrgyzstan Arbitrate the Dispute Pursuant to the 2003 Investment Law and the UNCITRAL Rules, and the Tribunal Renders a Final Award in Stans's and Kutisay's Favor..........................................3

    B. Gillham Initiated Recognition proceedings in the This Court, and Kyrgyzstan Defaulted..................................................................................................4

III. Argument....................................................................................................................5

    A. The Clerk Properly Entered Default Against Kyrgyzstan .....................................5

    B. This Court Has Subject Matter and Personal Jurisdiction.....................................6

        1. This Court has Subject Matter Jurisdiction .......................................................6

        2. This Court has Personal Jurisdiction .................................................................7

    C. Default Judgment Against Kyrgyzstan Should Be Granted .................................8

        1. Gillham is Entitled to Relief Under 9 U.S.C. § 207 .........................................8

        2. Gillham is Entitled to Recover its Attorneys' Fees ......................................10

IV. Conclusion ................................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                             Page(s)

*Africard Co. Ltd. v. Republic of Niger*,
   210 F. Supp. 3d 119 (D.D.C. 2016) .................................................................................6, 9

*Compagnie D'Enterprises CFE, S.A. v. Republic of Yemen*,
   180 F. Supp. 2d 12 (D.D.C. 2001) ........................................................................................6

*Concesionaria Dominicana de Autopistas y Carreteras, S.A. v. Dominican State*,
   926 F. Supp. 2d 1 (D.D.C. 2013) ...................................................................................10, 11

*Concesionaria Dominicana de Autopistas y Carreteras, S.A. v. Dominican State*,
   No. 12-CV-1335 (RLW), 2012 WL 6632812 (D.D.C. Dec. 20, 2012) ..................................6

*Customs & Tax Consultancy LLC v. Democratic Republic of Congo*,
   No. CV 18-1408 (RJL), 2019 WL 4602143 (D.D.C. Sept. 23, 2019) ....................................6

*Energoinvest DD v. Democratic Republic of Congo*,
   355 F. Supp. 2d 9 (D.D.C. 2004) ..........................................................................................6

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
   No. CV 03-1315 (RJL), 2005 WL 8167387 (D.D.C. Feb. 1, 2005), *aff'd*, 508
   F.3d 1062 (D.C. Cir. 2007) ...................................................................................................6

*Gold Reserve, Inc. v. Bolivarian Republic of Venezuela*,
   146 F. Supp. 3d 112 (D.D.C. 2015).  ....................................................................................9

*Leon Trading SA v. M.Y. Shipping Private Ltd.*,
   No. 10 Civ. 129 (PGG), 2010 WL 2772407 (S.D.N.Y. July 12, 2010) ................................10

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran
   v. Cubic Def. Sys., Inc.*,
   665 F.3d 1091 (9th Cir. 2011) .............................................................................................10

*Price v. Socialist People's Libyan Arab Jamahiriya*,
   294 F.3d 82 (D.C. Cir. 2002) ................................................................................................7

*Republic of Argentina v. AWG Grp. Ltd.*,
   211 F. Supp. 3d 335 (D.D.C. 2016), *aff'd*, 894 F.3d 327 (D.C. Cir. 2018) .............................10

*Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*,
   300 F. Supp. 3d 137 (D.D.C. 2018) .....................................................................................10

*Sterling Merch. Fin. Ltd. v. Republic of Cabo Verde*,
   261 F. Supp. 3d 48 (D.D.C. 2017) ................................................................................6, 8, 9

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
 No. CV 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018) ...................................5, 6

**Statutes**

9 U.S.C. § 207................................................................................................................. *passim*

28 U.S.C. § 1330(b) ..............................................................................................................7, 8

28 U.S.C. § 1604......................................................................................................................7

28 U.S.C. § 1605(a) .................................................................................................................7

28 U.S.C. § 1608............................................................................................................ *passim*

28 U.S.C. § 1961....................................................................................................................12

Foreign Sovereign Immunities Act............................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 55(a) ................................................................................................................5

Fed. R. Civ. P. 55(b)(2)................................................................................................. *passim*

Petitioner Gillham LLC ("**Gillham**") respectfully submits this Memorandum of Points and Authorities in support of its Motion for Default Judgment against Respondent, the Kyrgyz Republic ("**Kyrgyzstan**"), pursuant to 28 U.S.C. § 1608(e) and Federal Rule of Civil Procedure 55(b)(2).

I.   **PRELIMINARY STATEMENT**

On July 1, 2020, Gillham commenced this action against Kyrgyzstan by filing its petition (the "**Petition**") to recognize and enforce a final arbitral award (the "**Award**") rendered in favor of Stans Energy Corporation ("**Stans**") and Kutisay Mining LLC ("**Kutisay**") and against Kyrgyzstan on August 20, 2019 by an arbitral tribunal constituted pursuant to the Law of the Kyrgyz Republic on Investments in the Kyrgyz Republic of March 27, 2003 (the "**2003 Investment Law**") and the United Nations Commission on International Trade Law Rules of Arbitration of 1976 (the "**UNCITRAL Rules**").[1]   Dkt. No. 1; *see also* Second Declaration of Charlene C. Sun ("**Second Sun Decl.**") ¶ 2.  Gillham successfully served Kyrgyzstan with the Petition in this case on August 20, 2020.  Dkt. No. 8; Second Sun Decl. ¶ 5.  It has been over 60 days since service had been completed, and neither Kyrgyzstan nor its representatives has appeared before this Court, filed or served an opposition to the Petition, or sought or obtained from this Court an extension of time to file an opposition to the Petition.  *See* Dkt. No. 8; Second Sun Decl. ¶ 6.

Gillham filed its affidavit of default on November 11, 2020, and the Clerk entered default on November 13, 2020.  Dkt. Nos. 9, 10.

---

[1]   As explained in Gillham's Petition, Stans and Kutisay entered into an agreement to assign their rights in the Award, including the right to judicially enforce the Award, to three entities, including Petitioner Gilham LLC.  Dkt. No. 1 ¶ 4.  Gillham is authorized to conduct these proceedings and enforce the award on those entities' behalf.  *Id.* at n.1; Dkt. 1-4 ¶ 4.

Gillham now moves for a default judgment. As explained below, Gillham is entitled to the entry of judgment in its favor. Pursuant to 28 U.S.C. § 1608(e) and Federal Rule of Civil Procedure 55(b)(2), this Court should enter a default judgment against Kyrgyzstan for the amount of the Award, which includes (i) damages in the amount of US$ 15,027,081.89 plus pre- and post- Award interest at a rate of 5% compounded annually from October 16, 2014 until the date that of payment; and (ii) two thirds of the reasonable costs incurred by Stans and Kutisay in the Arbitration and two thirds of the costs of legal representation and assistance incurred by Stans and Kutisay totaling US$ 3,137,887.17, C$ 16,472.14 and € 796,303.86, plus post-Award interest at a rate of 5% compounded annually from the date of the Award until the date of payment. Gillham also seeks its attorneys' fees in connection with these proceedings.

## II.     FACTUAL BACKGROUND

Beginning in 2005, Stans made various investments in Kyrgyzstan, beginning with investments in the Kyrgyz uranium sector. Dkt. No. 1 ¶ 17. Stans later further invested into mines for the extraction of so-call rare earth elements. *Id.* ¶¶ 16, 18. Stans investments included obtaining licenses to operate the Kutessay II rare earth deposit ("**Kutessay II**") and the Kalesay beryllium deposit ("**Kalesay**"). *Id.* ¶ 18.

Stans signed its first license agreement regarding its mining activities at Kutessay II and Kalesay in December 2009 and its second in September 2010. *Id.* ¶¶ 19-20. The second license was registered with Stan's newly registered entity, Kutisay. *Id.* ¶ 20.

Beginning early 2012, Stans began discussing the creation of a public-private partnership with Kyrgyzstan regarding both the Kutessay II and Kalesay projects; however, at the same time Kyrgyzstan began adopting measures which deprived Stans and Kutisay the effective use and control of their investments, which amounted to an indirect *de facto* expropriation. *Id.* ¶ 22.

Kyrgyzstan's measures caused Stans and Kutisay to suspend operations by March 12, 2013, and later that month Stans and Kutisay notified the Kyrgyz authorities of the dispute between the parties concerning alleged breaches of Stans's and Kutisay's rights regarding Kutessay II and Kalesay. *Id.* ¶¶ 23-24. Following the notice of dispute, several judicial and arbitral proceedings took place concerning the validity of Stans's and Kutisay's licenses before the Inter-District Court of Bishkek and the Moscow Chamber of Commerce and Industry. *See id.* ¶ 25.

On October 17, 2014, the Stans's and Kutisay's licenses were terminated. *Id.* ¶ 26. Stans and Kutisay appealed this decision up to the Supreme Court of Kyrgyzstan without success. *Id.*

As a result, on May 13, 2015, Stans and Kutisay initiated the underlying arbitration against Kyrgyzstan. *Id.* ¶ 27.

> A. **STANS AND KUTISAY AND KYRGYZSTAN ARBITRATE THE DISPUTE PURSUANT TO THE 2003 INVESTMENT LAW AND THE UNCITRAL RULES, AND THE TRIBUNAL RENDERS A FINAL AWARD IN STANS'S AND KUTISAY'S FAVOR**

In the Arbitration, Stans and Kutisay sought damages for the losses it incurred as a result of Kyrgyzstan's breach of the 2003 Investment Law including, *inter alia*, Article 6(1) of the 2003 Investment Law concerning expropriation and Article 4(4) of the 2003 Investment Law concerning fair and equitable treatment. *Id.* ¶ 36.

The Tribunal found Kyrgyzstan liable for Stans's and Kutisay's losses. First, it upheld its jurisdiction over the dispute, finding that Stans and Kutisay were "investors" with a qualifying "investment" under the 2003 Investment Law, and rejected Kyrgyzstan's other jurisdictional objections regarding alleged bad faith on the part of Stans and Kutisay. *Id.* ¶ 35. Second, it found that Kyrgyzstan expropriated Stans's and Kutisay's investment and failed to treat them

fairly and equitably by terminating Stans's and Kutisay's licenses and preventing them from operating the Kutessay II and Kalesay projects.

As a result, the Tribunal awarded Stans and Kutisay damages in the amount of US$ 15,027,081.89 compensating Stans and Kutisay for their losses. *Id.* ¶ 37. The Tribunal further ordered Kyrgyzstan to pay both pre-award and post-award interest on this amount at a rate of 5% compounded annually from October 16, 2014 until the date of payment. *Id.* The Tribunal also awarded Stans and Kutisay two-thirds of the costs of the Arbitration of their legal costs (totaling US$ 3,137.17, C$ 16,47.14, and € 796,303.86), plus post-award interest at a rate of 5% interest, compounded annually from the date of the Award until full and final payment. *Id.*

B. **GILLHAM INITIATED RECOGNITION PROCEEDINGS IN THE THIS COURT, AND KYRGYZSTAN DEFAULTED**

Gillham filed its Petition on July 1, 2020 (Dkt. No. 1) and Kyrgyzstan was served pursuant to 28 U.S.C. § 1608(a)(3) on August 20, 2020 (Dkt. No. 8; Second Sun Decl. ¶ 5).

Specifically, on August 3, 2020, in accordance with 28 U.S.C. § 1608(a)(3), Gillham requested that the Clerk of Court mail a copy of the summons, Petition and all attachments and supporting papers, and notice of suit, together with Russian translations of each of the aforementioned documents to the Kyrgyz Republic. Dkt. No. 8; *see also* Dkt. No. 4; Second Sun Decl. ¶ 5. The Clerk of Court issued its Certificate of Mailing on August 13, 2020. Dkt. No. 6; Second Sun Decl. ¶ 5. Service on Kyrgyzstan was completed on August 20, 2020. 17, 2018. Dkt. No. 8; Second Sun Decl. ¶ 5. Under the Foreign Sovereign Immunities Act ("**FSIA**"), Kyrgyzstan had 60 days to file an opposition to the Petition. 28 U.S.C. § 1608(d). It failed to do so. As of the date of this submission, Kyrgyzstan has not entered an appearance in this matter,

4

filed its opposition to the Petition, served any opposition papers on Gillham, or sought or received from this Court an extension of time for filing an opposition to the Petition. Dkt. No. 9; *see also* Second Sun Decl. ¶ 6.

Gillham therefore moves this Court to enter a default judgment pursuant to 28 U.S.C. § 1608(e) and Rule 55(b)(2) of the Federal Rules of Civil Procedure. Gillham seeks a money judgment in the amounts specified in the Award (including interest), plus the costs of this proceeding, including reasonable attorneys' fees.

## III. ARGUMENT

If a foreign state fails to serve a response to a petition seeking to confirm a foreign arbitral award within 60 days of service, the petitioner is entitled to a default judgment under Federal Rule of Civil Procedure 55(b)(2), as long as the Clerk of the Court has entered an entry of default and the petitioner "establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Gillham filed and served its Petition, and Kyrgyzstan failed to respond within 60 days of service. The Clerk of the Court properly entered default against Kyrgyzstan and, as demonstrated below, Gillham is entitled to a default judgment. Accordingly, this Court should enter a default judgment in favor of Gillham and against Kyrgyzstan.

### A. THE CLERK PROPERLY ENTERED DEFAULT AGAINST KYRGYZSTAN

A petitioner may seek an entry of default from the Clerk of the Court when a respondent fails to appear or respond in time and that failure is shown by affidavit. Fed. R. Civ. P. 55(a). As explained above, Gillham filed its affidavit of default on November 11, 2020, and the Clerk entered default against Kyrgyzstan two days later. Dkt. Nos. 9, 10. Thus, it is procedurally proper for this Court to issue a default judgment against Kyrgyzstan pursuant to Rule 55(b)(2). *See* Fed. R. Civ. P. 55(a); *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. CV 17-

1457 (TJK), 2018 WL 6605633, at *3 n.2 (D.D.C. Dec. 17, 2018) ("Before a court may enter default judgment against an absent defendant, the plaintiff must first request that the clerk of the court enter that defendant's default"). In fact, this Court has issued default judgments against foreign states and confirmed foreign arbitral awards pursuant to 9 U.S.C. § 207 on many previous occasions. *See e.g., Sterling Merch. Fin. Ltd. v. Republic of Cabo Verde,* 261 F. Supp. 3d 48, 53 (D.D.C. 2017); *Africard Co. Ltd. v. Republic of Niger,* 210 F. Supp. 3d 119, 129 (D.D.C. 2016)*; see also Customs & Tax Consultancy LLC v. Democratic Republic of Congo,* No. CV 18-1408 (RJL), 2019 WL 4602143, at *7 (D.D.C. Sept. 23, 2019)*; Tidewater*, 2018 WL 6605633 at *7 (granting Tidewater's motion for default judgment); *Concesionaria Dominicana de Autopistas y Carreteras, S.A. v. Dominican State,* No. 12-CV-1335 RLW, 2012 WL 6632812, at *4 (D.D.C. Dec. 20, 2012); *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo,* No. CV 03-1315 (RJL), 2005 WL 8167387, at *2 (D.D.C. Feb. 1, 2005), *aff'd*, 508 F.3d 1062 (D.C. Cir. 2007)*; Energoinvest DD v. Democratic Republic of Congo,* 355 F. Supp. 2d 9, 12 (D.D.C. 2004); *Compagnie D'Enterprises CFE, S.A. v. Republic of Yemen,* 180 F. Supp. 2d 12, 14 (D.D.C. 2001).

### B. THIS COURT HAS SUBJECT MATTER AND PERSONAL JURISDICTION

#### 1. This Court has Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this action under the FSIA's "arbitration exception," which abrogates a foreign state's presumptive immunity from a proceeding to "confirm an award" made pursuant to an agreement "by the foreign state," "with or for the benefit of a private party," to "submit to arbitration," if the "award is . . . governed by a treaty" such as the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "**New York Convention**") that is

"in force for the United States" and "call[s] for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6).

That exception applies here to abrogate any presumptive immunity Kyrgyzstan may have had under Section 1604 of the FSIA in connection with this proceeding. The Award was issued pursuant to an agreement to arbitrate contained within the 2003 Investment Law, which was enacted on March 27, 2003. Dkt. No. 1 at 1; Dkt. No. 1-4 ¶¶ 2-3. The enforcement of the Award is governed by the New York Convention, which is in force in the United States (*see* 21 U.S.T. 2517), and Chapter 2 of the Federal Arbitration Act ("**FAA**"), 9 U.S.C. §§ 201 *et seq*.

### 2. This Court has Personal Jurisdiction

This Court may exercise personal jurisdiction over a foreign state where the petitioner establishes the applicability of an exception to immunity under Section 1605(a) of the FSIA (such as the recognition of an New York Convention award) and service of process has been accomplished in accordance with 28 U.S.C. § 1608. *See* 28 U.S.C. § 1330(b) ("Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subdivision (a) where service has been made under section 1608 . . ."); *see also Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 99 (D.C. Cir. 2002) (finding that minimum contacts are not needed to exercise personal jurisdiction over a foreign state).

Gillham properly served Kyrgyzstan with the summons and Petition in accordance with the FSIA. Under the FSIA, service on a foreign state may be effected, "if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint [or petition] and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk

7

of the court to the head of the ministry of foreign affairs of the foreign state concerned." 28 U.S.C. § 1608(a)(3). Service could not be made under either paragraph (1) or (2) because there is no special arrangement for service of process between Gillham and Kyrgyzstan and Kyrgyzstan is not a party to an international convention on service of judicial documents. Thus, service pursuant to 28 U.S.C. § 1608(a)(3) was proper. Gillham sent copies of the Summons and Petition and Notice of Petition, together with a translation of each into the official language of the foreign state to the Clerk of Court to be dispatched to the head of the Kyrgyz Foreign Ministry. Dkt. No. 4. Kyrgyzstan was served successfully on August 20, 2020. Dkt. No. 8, Ex. A. Therefore, on that date, Kyrgyzstan was served in accordance with the FSIA's requirements.

This Court therefore has personal jurisdiction over Kyrgyzstan. *See* 28 U.S.C. § 1330(b).

### C.   DEFAULT JUDGMENT AGAINST KYRGYZSTAN SHOULD BE GRANTED

Having shown that a default was properly entered by the Clerk of the Court and that this Court has subject matter and personal jurisdiction, Gillham is entitled to a default judgment because it has "establishe[d] [its] claim or right to relief by [satisfactory] evidence. 28 U.S.C. § 1608(e).

#### 1.   Gillham is Entitled to Relief Under 9 U.S.C. § 207

The FSIA provides that in order to obtain a default judgment against a foreign state, a petitioner must establish "his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Gillham's sole claim in this action seeks the recognition and enforcement of the Award, which is governed by the New York Convention and the FAA. As explained in *Sterling Merchant*, "[u]nder the New York Convention and the Federal Arbitration Act, the recipient of a foreign arbitral award is authorized to seek an order in federal court 'confirming

the award as against any party to the arbitration' and, upon receipt of such a petition, '[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in said Convention'" and "[a] district court is 'afford[ed] ... little discretion in refusing or deferring enforcement of foreign arbitral awards: the Convention is 'clear' that a court 'may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.'" *Sterling Merch.,* 261 F. Supp. 3d at 52 (internal citations omitted).

Further, courts in this District have long recognized that, where a petitioner seeks to recognize a New York Convention Award, the party resisting confirmation "bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies." *Gold Reserve, Inc. v. Bolivarian Repub. of Venezuela*, 146 F. Supp. 3d 112, 120 (D.D.C. 2015). Where the respondent is in default "it obviously has not put forth any arguments against confirmation," and a default judgment is appropriate. *Sterling Merch.*, 261 F. Supp. 3d at 53; *see also Africard,* 210 F. Supp. 3d at 127 ("Given Niger's lack of appearance in this matter, it has not met its burden on any of those objections.").

Courts must also satisfy themselves that neither of the Article V(2) grounds for denying recognition of an arbitral award apply, namely: (1) that the subject matter of the dispute is capable of settlement by arbitration under the laws of the United States, and (2) that recognition or enforcement of the award would not be contrary to U.S. public policy. *See* New York Convention, art. V(2)(1); *see also Sterling Merch.*, 261 F. Supp. 3d at 53 ("Article V(2) provides two additional grounds for denying recognition of an arbitral award, whether the respondent asserts them or not.").

9

Here, there is nothing in U.S. law that would prohibit arbitration of foreign investment disputes, and U.S. courts have routinely enforced foreign arbitral awards deciding claims of expropriation and fair and equitable treatment by the sovereign host state, as were brought by Stans and Kutisay against Kyrgyzstan in this case.  *See e.g.*, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela,* 300 F. Supp. 3d 137, 151 (D.D.C. 2018) (confirming an award which decided claims of expropriation in favor of the investor); *Republic of Argentina v. AWG Grp. Ltd.*, 211 F. Supp. 3d 335, 363 (D.D.C. 2016), *aff'd*, 894 F.3d 327 (D.C. Cir. 2018) (confirming an award which found the host State failed to grant the investment fair and equitable treatment).

Further, the Award does not in any way violate U.S. public policy.  Accordingly, this Court should recognize the Award and enter a default judgment against Kyrgyzstan in the full amount of the Award pursuant to Federal Rule of Civil Procedure 55(b)(2), 28 U.S.C. § 1608(e), and 9 U.S.C. § 207.

### 2. Gillham is Entitled to Recover its Attorneys' Fees

Additionally, this Court should grant Gillham's attorneys' fees.  This Court retains an "inherent power" to assess attorneys' fees even absent express authorization by means of the New York Convention or Congressional statute.  *Concesionaria Dominicana de Autopistas y Carreteras, S.A. v. Dominican State*, 926 F. Supp. 2d 1, 2 (D.D.C. 2013).  As explained by the court in *Concesionaria*, attorneys' fees are appropriate where "the respondent simply ignored the validity of the Arbitration Award and sought to avoid payment."  *Id.* (internal citations omitted); *see also Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.,* 665 F.3d 1091, 1104 (9th Cir. 2011) (holding that "federal law permits an award of attorney's fees in an action under the [New York] Convention, as it does in other federal question cases.")*; see also Leon Trading SA v. M.Y. Shipping Private Ltd.*, No. 10 Civ.

10

129 (PGG), 2010 WL 2772407, at *4 (S.D.N.Y. July 12, 2010) (granting petitioner's request for attorneys' fees in arbitration case where the "[r]espondents failed to submit opposition papers to the Petition"). The *Concesionaria* court found that where the state, as an award debtor, "refused to participate in [the U.S. action] resulting in a default and default judgment being entered against it," the state's inaction was "inherently unjustified and in bad faith." *Concesionaria*, 926 F. Supp. 2d at 3. As a result, that court found the award creditor entitled to an award of reasonable attorneys' fees and costs. *Id.* Here too, Kyrgyzstan has chosen not to participate in these proceedings and to ignore its legal obligation to satisfy the Award. In these circumstances, the Court should, in addition to entering a judgment against Kyrgyzstan in the amount of the Award, further award Gillham its attorneys' fees and costs incurred in this action.

## IV.   CONCLUSION

In sum, for the reasons set forth above, Gillham respectfully requests that the Court enter a default judgment, pursuant to Federal Rule of Civil Procedure 55(b)(2), 28 U.S.C. § 1608(e), and 9 U.S.C. § 207, recognizing the Award and entering judgment against Kyrgyzstan for:

(a) US$ 15,027,081.89 plus pre- and post- Award interest at a rate of 5% compounded annually from October 16, 2014 until the date that of payment;

(b) two thirds of the reasonable costs incurred by Stans and Kutisay in the Arbitration and two thirds of the costs of legal representation and assistance incurred by Stans and Kutisay totaling US$ 3,137,887.17, C$ 16,472.14 and € 796,303.86, plus post-Award interest at a rate of 5% compounded annually from the date of the Award until the date of payment;

(c) Post-judgment interest at the rate applicable under 28 U.S.C. § 1961 from the date judgment is entered until the date of satisfaction;

(d) Gillham's costs of this proceeding, including reasonable attorneys' fees; and

(e) Any such other and further relief as may be proper.

Dated: New York, NY
December 9, 2020

Respectfully submitted,

      */s/ James E. Berger*
James E. Berger (D.C. Bar No. 481408)
Charlene C. Sun (D.C. Bar No. 1027854)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: (212) 556-2200
Fax: (212) 556 -2222
jberger@kslaw.com
csun@kslaw.com

*Attorneys for Petitioner Gillham LLC*