## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ───────────────────────────── ) | |
| GEBRE LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-1795 (ABJ) |
| ) | |
| KYRGYZ REPUBLIC, ) | |
| ) | |
| Defendant. ) | |
| ───────────────────────────── ) | |

### MEMORANDUM OPINION

Petitioner Gebre LLC ("Gebre") has filed a petition to confirm an arbitration award against respondent, the Kyrgyz Republic ("Kyrgyzstan"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207. *See* Pet. to Confirm Foreign Arbitral Award [Dkt. # 1] ("Pet."). Gebre, under its former name of Gillham LLC ("Gillham"),[1] was assigned the right to enforce this award by Stans Energy ("Stans") and Kutisay Mining LLC ("Kutisay"), Ex. C to Pet. [Dkt. # 1-7] ("Ex. C"), which initiated the arbitration to resolve a dispute with Kyrgyzstan concerning the expropriation of their assets. The claimants obtained a judgment against Kyrgyzstan and were awarded: (1) $15,027,081.89 in damages plus pre- and post-Award interest at a rate of 5% compounded annually from October 16, 2014 until the date of payment, and (2) two thirds of the arbitration and legal costs, totaling $3,137,887.17 plus post-award interest at a rate of 5% compounded annually from the date of the award until the date of payment. Ex. A to Pet. [Dkt. # 1-5] ("Award") at 279, ¶ 922.[2] Having received no response to date, petitioner now moves for

---

1    Gillham changed its name to "Gebre" on December 23, 2020. Certificate of Amendment of the Certificate of Formation of Gillham LLC [Dkt. # 21-1].

2    Page numbers cited by the Court refer to the PDF page number.

default judgment under Federal Rule of Civil Procedure 55(b)(2).  *See* Pet'r's Mot. for Default J. [Dkt. # 25] ("Mot.").  Considering petitioner's submissions and the record as a whole, the Court will **GRANT** petitioner's motion for default judgment and confirm the arbitral award.

## BACKGROUND

Gebre filed its petition to confirm the arbitration award on July 1, 2020.  Pet. at 12.  On August 3, 2020, Gebre requested that the Clerk of Court mail a copy of the summons, notice, and petition, all with Russian translations, to the Kyrgyz Republic in order to serve it in accordance with 28 U.S.C. § 1608(a)(3).  Aff. Requesting Foreign Mailing [Dkt. # 4].  The Clerk of Court issued a certificate of mailing on August 13, 2020, Certificate of Mailing [Dkt. # 6], and service was completed on August 20, 2020.  Return of Service Decl. [Dkt. # 8].  On November 11, 2020, after Kyrgyzstan failed to enter its appearance or respond in any way, petitioner filed an affidavit for default.  Aff. for Default [Dkt. # 9].  The clerk then entered default against Kyrgyzstan on November 13, 2020.  Clerk's Entry of Default [Dkt. # 10].  On December 9, 2020, Gebre filed its first motion for default judgment, Pet'r's Mot. for Default J. [Dkt. # 11], which the petitioner withdrew on September 9, 2021 to "re-effectuate service to ensure compliance with 28 U.S.C. § 1608(a)(3)."  *See* Voluntary Withdrawal of Mot. for the Entry of Default J. [Dkt. # 12] at 2.

To this end, Gebre submitted a new request on September 20, 2021 to the Clerk of Court to mail a copy of the summons, notice, and petition, all with Russian translations, by mail to Mr. Ruslan Kazakbayev, the Head of the Ministry of Foreign Affairs of Kyrgyzstan.  *See* Aff. Requesting Foreign Mailing [Dkt. # 13].  The Clerk of Court issued the Certificate of Mailing on October 4, 2021, Certificate of Mailing [Dkt. # 15], and on January 27, 2022, plaintiff submitted a FedEx tracking notice indicating that the combined shipment had indeed been delivered on October 8, 2021.  Return of Service [Dkt. # 23].  After Kyrgyzstan once again failed to enter its

appearance or respond in any way, petitioner filed another affidavit in support of default.  Aff. for Default [Dkt. # 22].  The Clerk of Court again entered default against Kyrgyzstan on February 2, 2022.  Clerk's Entry of Default [Dkt. # 24].  And on February 23, 2022, Gebre filed the instant motion for default judgment.  *See* Mot. at 3.

The arbitration award that Gebre seeks to confirm arises from a dispute over the expropriation of investments Stans and Kutisay made in Kyrgyzstan.  Mot. at 7.  Stans is a "publicly-traded company incorporated under the laws of Ontario, Canada," Pet. ¶ 2, that began to invest in Kyrgyzstan's uranium and rare earth elements sectors in 2005.  Award at 49–50, ¶ 173.  Kutisay is a limited liability company incorporated in Kyrgyzstan and wholly owned by Stans that was established to enable Stans to hold assets and licenses and conduct business in Kyrgyzstan.[3]  *Id.* at 12, ¶ 1; 50, ¶ 175.

Stans' investments in Kyrgyzstan included "bidding for and obtaining licenses to mine the Aktyuz Ore Field where the Kutessay II rare earth deposit and Kalesay beryllium deposit were located."  Pet. ¶ 18; Award at 51, ¶ 179.  Stans and Kutisay signed their first license agreement with Kyrgyz authorities for mining activities on December 21, 2009, Pet. ¶ 19; Award at 66, ¶¶ 213–14, and reached a second license agreement on September 20, 2010.  Pet. ¶ 20, Award at 73, ¶¶ 232–33.  In early 2012, Stans began discussions with Kyrgyzstan to create a "public-private partnership . . . with respect to the Kutessay II and Kalesay projects," resulting in a third license agreement on June 15, 2012 in which the parties agreed to reach a "precise" agreement to transfer shares in Kutisay by September 30, 2012.  Pet. ¶ 21; Award at 81, ¶ 259; 84, ¶¶ 267–68.

---

3       Stans also incorporated a local subsidiary in Kyrgyzstan called Stans KG, which wholly owns Kutisay.  Pet. ¶ 17; Award at 50, ¶ 175.

Kyrgyzstan, however, began adopting measures that affected Stans' and Kutisay's "effective use and control" of their licenses.[4]  Pet. ¶ 22; Award at 88–97, ¶¶ 276–308 (explaining the measures that impacted the licenses).  On March 28, 2013, Stans and Kutisay sent a notice of dispute to the Kyrgyz authorities pursuant to Article 18 of the 2003 Kyrgyz Investment Law concerning these measures, Pet. ¶ 24; Award at 96, ¶ 306, litigation ensued, and Stans and Kutisay ultimately referred the dispute to arbitration on May 13, 2015.  Pet. ¶ 27; Award at 19–20, ¶ 28.

In arbitration, Stans and Kutisay "alleged that Kyrgyzstan's actions resulted in an unlawful expropriation of their investments and failed to provide them fair and equitable treatment."  Pet. ¶ 28; Award at 14–15, ¶ 13.  On August 20, 2019, an arbitral tribunal convened in Paris, France and found that Kyrgyzstan had expropriated Stans' and Kutisay's investments and had "failed to treat [those] investments fairly and equitably."[5]  Pet. ¶ 36; Award at 190, ¶ 614; 200, ¶ 646.  The tribunal awarded Stans and Kutisay $15,027,081.89, two thirds the costs of the arbitration and legal costs totaling in $3,137,887.17, and post-award interest at a rate of 5% compounded annually from the date of the Award until the date of payment.  Award at 279, ¶ 922.  On March 25, 2020, Stans and Kutisay entered into an agreement to assign their rights to the arbitral award to Gebre, a limited liability company incorporated in Wilmington, Delaware.  Pet. ¶ 4; Ex. C at 2.

---

4       Those measures include:  (1) a resolution on June 26, 2012 by a Parliamentary Committee for the Development of Industries and the Economy "ordering the Kyrgyz State Agency of Geology and Mineral Resources to cancel" one of Stans' Kutessay licenses and place another license up for auction, Pet. ¶ 22; Award at 90, ¶ 282; and (2) a thirty-day work suspension order issued by the Subsoil Use Licensing Commission of the Kyrgyz State Agency of Geology and Mineral Resources.  Pet. ¶ 22; Award at 92–93, ¶ 291.

5       The arbitration was seated in London, Pet. ¶ 29; Award at 265, ¶ 861, with hearings held in Paris, France.  Award at 46, ¶ 60; 57, ¶ 131.  Both the United Kingdom and France are signatories to the New York Convention.  See New York Arbitration Convention Contracting States, https://www.newyorkconvention.org/countries (last visited September 2, 2021).

**STANDARD OF REVIEW**

"The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall*, *LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008), citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980).  Under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, a court shall not enter a default judgment against a foreign state "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This standard is identical to the standard for entry of default judgments against the United States under Federal Rule of Civil Procedure 55(e).  *Hill v. Republic of Iraq*, 328 F.3d 680, 683 (D.C. Cir. 2003).  As a result, the Court cannot simply treat the allegations asserted in the petition as true, but it must "inquire further before entering judgment against parties in default." *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 171 (D.D.C. 2010).  Courts in this district have observed that when evaluating petitioners' claims, though, they "may accept the plaintiff's uncontroverted factual allegations if they are supported by documentary and affidavit evidence." *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 161 (D.D.C. 2013), citing *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 49 (D.D.C. 2012).

**ANALYSIS**

**I.      The Court has subject matter jurisdiction over this case.**

Before the Court can consider whether default judgment is appropriate in this matter, it must determine whether it has subject matter jurisdiction over the dispute between Gebre and Kyrgyzstan.  Federal courts are courts of limited jurisdiction with the presumption that "a cause lies outside this limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), so the Court must "begin . . . with an examination of our jurisdiction."

*Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004).  To enforce a foreign arbitral award against a foreign sovereign, "[f]irst, there must be a basis upon which a court in the United States may enforce a foreign arbitral award; and second, [the foreign state] must not enjoy sovereign immunity from such an enforcement."  *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 121 (D.C. Cir. 1999).

### A.  The Court has jurisdiction under the Federal Arbitration Act.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq.*, codifies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") into U.S. law to provide a "carefully structured scheme for the enforcement of foreign arbitral awards." *Belize Soc. Dev. Ltd. v. Gov't of Belize* (*Belize I*), 668 F.3d 724, 733 (D.C. Cir. 2012), citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).  Under section 202 of the FAA, "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered commercial . . . falls under the [New York] Convention."  9 U.S.C. § 202.  "[D]istrict courts of the United States . . . shall have original jurisdiction over [an action under the Convention], regardless of the amount in controversy." 9 U.S.C. § 203.

The Second Circuit has observed that an agreement to arbitrate exists, and therefore a court has subject matter jurisdiction under the FAA, when:  "(1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope."  *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 146 (2d Cir. 2001).  If each element is satisfied, then the agreement properly falls under the jurisdiction of the federal court.

The record enables the Court to dispense with the third and fourth elements at the start:  the subject matter in the dispute between Stans, Kutisay, and Kyrgyzstan is commercial, and it is not entirely domestic in scope.  *See* Pet. ¶¶ 16–22.

The D.C. Circuit has explained that the term "commercial" used in the New York Convention refers to "matters or relationships, whether contractual or not, that arise out of or in connection with commerce."  *Belize Soc. Dev. Ltd. v. Gov't of Belize* (*Belize II*), 794 F.3d 99, 103–04 (D.C. Cir. 2015).  Further, "the full scope of 'commerce' and 'foreign commerce,' as those terms have been broadly interpreted, is available for arbitral agreements and awards."  *Id.* at 104.  The dispute in this case, which arose out of a series of license agreements between the parties to transfer shares of company stock and mine rare earth elements in Krygyzstan, "arise[s] out of or in connection with commerce" within the broad meaning of commercial set forth in *Belize II*. *See id.*

Additionally, the subject matter is not entirely domestic in scope because it involves a dispute originating in Kyrgyzstan, and Gebre is the only party that is a citizen of the United States. *See* 9 U.S.C. § 202 ("An agreement or award arising out of [a commercial relationship] which is entirely between citizens of the United States shall be deemed not to fall under the Convention.").

The remaining elements of the *Titan* test require a written agreement to arbitrate in the territory of a signatory of the convention.  241 F.3d at 146.  Here, there was no arbitration provision included in the agreements between Stans, Kutisay, and Kyrgyzstan, *see* Award at 66–67, ¶ 214; 73–74, ¶ 234; 84–86, ¶ 268, but the court may exercise subject matter jurisdiction nonetheless given Kyrgyzstan's agreement in writing to submit to arbitration.  *See* New York Convention art. II, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the definition of "agreement in writing" includes, but is not limited to, an arbitral clause in a contract).

After Stans and Kutisay served notice of their intent to submit the matter to arbitration on May 13, 2015, Award at 19–20, ¶ 28, Kyrgyzstan objected to the tribunal's jurisdiction and requested bifurcation of the proceedings to decide the jurisdictional question first. *Id.* at 20, ¶ 29; 21, ¶ 38. The arbitral tribunal agreed to proceed in that manner and to hear the jurisdictional challenges first. *Id.* at 21, ¶ 41.

Because Stans and Kutisay had no written agreement with Kyrgyzstan concerning the resolution of disputes arising out of the licenses, they relied on Kyrgyzstan's 2003 Investment Law, a copy of which was supplied to the Court as Ex. B to the petition [Dkt. # 1-6]. Article 18(2) of the statute states: "[i]n the absence of such [alternative dispute] agreement," a foreign investor may request the dispute be settled in "arbitration or an international temporary arbitral tribunal (commercial court) formed in accordance with the arbitration rules of the United Nations Commission on International Trade Law." Award at 107–08, ¶ 342.

On September 23, 2016, the tribunal held a hearing on jurisdiction in Paris, Award at 24, ¶ 60, and on January 25, 2017, it issued a decision dismissing all of Kyrgyzstan's objections to jurisdiction with the exception of the question of whether Stans and Kutisay qualified as "investors" for purposes of the Kyrgyz legislation, which it deferred to be considered in conjunction with the merits of the case. *Id.* at 25, ¶ 68.[6] The tribunal then took up the merits of the bifurcated dispute, *id.* at 35, ¶ 131, and after pre-hearing briefing, the hearing, and post-hearing briefing, issued the award in favor of Stans and Kutisay.

In its award, the tribunal addressed the jurisdictional question again. It rejected Kyrgyzstan's position that the 2003 Investment Law, which covered "*any dispute* between an

---

6       It does appear that Kyrgyzstan sought to set that ruling aside in the High Court of England and Wales, Award at 25, ¶ 69, but that the set aside claim was dismissed. *Id.* at 26, ¶ 74.

investor and government bodies," could be read to limit the type of disputes that could be submitted to arbitration. Award at 113–15, ¶¶ 355–360. It found that Stans Energy qualified as an "investor" holding an "investment" under the 2003 Investment law, and that the law made no differentiation between direct and indirect investments. *Id.* at 132–33, ¶¶ 417–420. With respect to whether Kutisay qualified as an "investor" under the 2003 Investment Law, the tribunal reported that it had "no doubt" that it did. *Id.* at 136, ¶¶ 431–433. It acknowledged that Kutisay was established under the laws of the Kyrgyz Republic, but it observed that it was wholly owned by Stans Energy, a foreign entity, through its wholly owned subsidiary, Stans KG. *Id.* at 140, ¶ 444. Since it found that "all decisions made by Stans KG as the shareholder of Kutisay Mining LLC were first adopted and authorized by Stans Energy and that Article 1(3)(2)(b) does not require that control must be direct," it concluded that Kutisay qualified as a "foreign investor" for purposes of the 2003 Investment Law and the agreement to arbitrate. *Id.* at 140, ¶¶ 445–447.

Kyrgyzstan never appealed the panel's final decision on that basis or any other and it has not entered an appearance in this case to oppose the enforcement of the award. Second Decl. of Charlene Sun [Dkt. # 11-2] ("Second Sun Decl.") ¶¶ 3, 6.

In the Court's view, the question of whether the 2003 Investment Law applies to the dispute between the parties is more akin to a dispute about "arbitrability," that is "whether the parties are bound by a given arbitration clause," than "a dispute about the meaning and application of particular procedural preconditions for the use of arbitration," which would be for the arbitrator to decide. *See B.G. Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014). Therefore, in an abundance of caution, the Court has independently considered the question. *See Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 205–06 (D.C. Cir. 2015).

The Court has reviewed the tribunal's award, which sets out the procedural history of the matter and the evidence presented on each question in painstaking detail.  It summarizes the positions of the claimants and the respondents on every issue, so while the Court has not had the benefit of any briefing by respondent here, it has considered the grounds for the jurisdictional objections Kyrgyzstan raised before the tribunal and the evidence presented in support of its contentions, and it has the information necessary to make an independent determination.  And it is plain to the Court, as it was to the arbitral panel, that through the 2003 Foreign Investment Law, Kyrgyzstan extended an offer to arbitrate investment disputes with foreign investors, that Stans and Kutisay qualify as investors under the statute, and that they accepted in the manner prescribed by Kyrgyz law.  *See Chevron,* 795 F.3d at 206.  Moreover, pursuant to Article 18(2)(b) of the 2003 Foreign Investment Law, the arbitration was conducted by an international tribunal seated in the United Kingdom, with hearings in France, and both countries are signatories to the New York Convention.

Therefore, the Court finds that the first and second elements of the *Titan* test have also been satisfied; the award was made pursuant to an appropriate arbitration agreement with a foreign state, and this matter falls under the New York Convention and thus, the FAA.  241 F.3d at 146.

### B.  Kyrgyzstan is not immune under the FSIA.

The next question to be determined is whether Kyrgyzstan is immune from suit in this Court under the FSIA.   The FSIA, 28 U.S.C. § 1602 *et seq.*, is the "sole basis for obtaining jurisdiction over a foreign state in [the courts of the United States]."  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).  Under the FSIA, "a foreign state is presumptively immune from the jurisdiction of United State courts," and "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign

state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).  Because the subject matter jurisdiction of the court depends on the existence of one of the FSIA's exceptions, "[a]t the threshold of every action in a District Court against a foreign state . . . the court must satisfy itself that one of the exceptions applies." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493–94 (1983).

The "treaty" exception to the FSIA provides that:

> A foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States in any case . . . in which the action is brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6)(B).

Arbitral awards that are subject to the New York Convention, codified by the FAA, fall under this treaty exception.  *Creighton*, 181 F.3d at 123–24 ("Indeed, it has been said with authority that the New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception.") (internal quotation marks omitted).

As the petitioners, Stans and Kutisay bear the initial burden to support their claim that the FSIA exception applies, but "this is only a burden of production; the burden of persuasion rests with the foreign sovereign claiming immunity, which must establish the absence of the factual basis by a preponderance of the evidence." *Agudas Cahsidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 940 (D.C. Cir. 2008).  Because the petitioners here have come forward with prima facie evidence of an agreement between the parties in the form of the Kyrgyz 2003 Investment Law, and respondent has not come forward with any evidence to meet its burden to establish that there was no valid agreement between the parties, or that therefore, the New York Convention does not apply, the Court finds that the FSIA treaty exception applies, and that Kyrgyzstan does not enjoy sovereign immunity under the FSIA.

11

II.     **Gebre served Kyrgyzstan appropriately according to the FSIA.**

Before it considers the entry of judgment in default, the Court must also determine whether

Gebre served Kyrgyzstan properly to give it notice of this lawsuit.  The FSIA requires that foreign

states must be served in one of the following ways:

> (1) by delivery of a copy of the summons and complaint in accordance with any
> special arrangement for service between the plaintiff and the foreign state
> or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and
> complaint in accordance with an applicable international convention on
> service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of
> the summons and complaint and a notice of suit, together with a translation
> of each into the official language of the foreign state, by any form of mail
> requiring a signed receipt, to be addressed and dispatched by the clerk of
> the court to the head of the ministry of foreign affairs of the foreign state
> concerned, or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending
> two copies of the summons and complaint and a notice of suit, together with
> a translation of each into the official language of the foreign state . . . to the
> Secretary of State in Washington, District of Columbia . . . and the
> Secretary of State shall transmit one copy of the papers through diplomatic
> channels to the foreign state . . . .

28 U.S.C. § 1608(a).

Service in this case was made under 28 U.S.C. § 1608(a)(3) because there was no special

arrangement between Gebre and Kyrgyzstan.  Gebre's attorney submitted a declaration stating:

> On September 20, 2021, Gebre requested that the Clerk of Court mail a copy
> of the summons, petition and all attachments and supporting papers, and
> notice of suit together with Russian translations of each . . . to the head of
> the Ministry of Foreign Affairs of Kyrgyzstan pursuant to 28 U.S.C.
> § 1608(a)(3).

Second Decl. of Erin Collins [Dkt. # 25-1] ¶ 7; *see also* Request from Plaintiff [Dkt. # 14].

The Clerk of Court issued its Certificate of Mailing on October 4, 2021, Certificate of Mailing [Dkt. # 15], and petitioner filed its proof of service on January 27, 2022.  Return of Service [Dkt. # 23].  Therefore, there is a basis for a finding that the petitioner has completed all of the steps necessary to effect service under 28 U.S.C. § 1608(a).

### III.     The Court can exercise personal jurisdiction over Kyrgyzstan.

The availability of subject matter jurisdiction under the FSIA determines whether a court can exercise personal jurisdiction over a foreign state because "foreign sovereigns and their extensively-controlled instrumentalities are not 'persons' under the Fifth Amendment's Due Process Clause—and thus have no right to assert a personal jurisdiction defense."  *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 809 (D.C. Cir. 2012).  A court can exercise personal jurisdiction over a foreign state for every claim "over which the district courts have [subject matter] jurisdiction . . . where service has been made under section 1608."  28 U.S.C. § 1330(b).  Stated another way, in suit against a foreign sovereign, "subject matter jurisdiction plus service of process equals personal jurisdiction."  *Prac. Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987), quoting *Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir. 1981).

Because the Court has found both that it has subject matter jurisdiction to enforce the award and that Gebre properly served Kyrgyzstan, it also finds that it has personal jurisdiction over Kyrgyzstan.

### IV.     The Court will grant the motion of default judgment to confirm the arbitration award.

This brings us to the merits of petitioner's motion for default judgment.  Federal courts have little discretion to refuse to confirm an arbitration award under the FAA; the statute provides that the district court "shall confirm the award unless it finds one of the grounds for refusal or

deferral of recognition or enforcement of the award specified in the [New York] Convention."
9 U.S.C. § 207; *see also Belize I*, 668 F.3d at 727 (stating that "[c]onsistent with the emphatic
federal policy in favor of arbitral dispute resolution recognized by the Supreme Court," the FAA
gives the district court "little discretion" in refusing to enforce foreign arbitral awards) (internal
quotations omitted).

The potential grounds for refusing to enforce an arbitral award are listed in sections 1 and
2 of Article V of the New York Convention.  Section 1 of Article V recognizes those circumstances
in which:

> (a) The parties to the agreement . . . were, under the law applicable to them,
> under some incapacity, or the said agreement is not valid under the law to
> which the parties have subjected it or, failing any indication thereon, under
> the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice
> of the appointment of the arbitrator or of the arbitration proceedings . . . ; or
>
> (c) The award deals with a difference not contemplated by or not falling within
> the terms of the submission to arbitration . . . ; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not
> in accordance with the agreement of the parties . . . ; or
>
> (e) The award has not yet become binding on the parties, or has been set aside
> or suspended by a competent authority of the country in which, or under the
> law of which, that award was made.

New York Convention art. V, § 1, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38.

The party resisting confirmation "bears the heavy burden of establishing that one of the
grounds for denying confirmation in Article V applies."  *Gold Rsrv. Inc. v. Bolivarian Republic of
Venezuela*, 146 F. Supp. 3d 112, 120 (D.D.C. 2015); *see also* New York Convention art. V, § 1
("Recognition and enforcement of the award may be refused, *at the request of the party against*

*whom it is invoked . . .*") (emphasis added).  Given that Kyrgyzstan had not appeared in this case, it has not carried its burden to establish a basis for any of these objections.

Section 2 of Article V provides two additional grounds for denying recognition of an arbitral award, regardless of whether respondent asserts them or not:

> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of [the country where enforcement is sought]; or
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention art. V, § 2, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38.

Neither of these provisions are applicable to this petition.  The dispute concerning the expropriation of assets by Kyrgyzstan and fair and equitable treatment arises out of a series of licensing agreements governing investments in that country, and the subject is amenable to resolution by arbitration in the United States.  *See generally* New York Convention art. II.  And as petitioner points out, other district courts have enforced foreign arbitral awards against a sovereign respondent on claims of expropriation and breach of fair and equitable treatment obligations.  *See, e.g.*, *Republic of Argentina v. AWG Grp. Ltd.*, 211 F. Supp. 3d 335, 363 (D.D.C. 2016) (confirming an arbitral against Argentina for expropriation and fair and equitable treatment claims).  And given the "emphatic federal policy in favor of arbitral dispute resolution," *Belize I*, 668 F.3d at 727, citing *Mitsubishi Motors*, 473 U.S. at 631, the Court finds that the public policy exception would also fail to bar enforcement of this arbitral decision.

Because none of the grounds of refusal are applicable in this case, the court will grant the motion for default judgment and confirm the arbitral award.

**CONCLUSION**

For the reasons explained above, the Court finds that it has subject matter and personal jurisdiction over Kyrgyzstan.   It will **GRANT** petitioner's motion for default judgment and confirm the arbitral award under the Federal Arbitration Act.   The total award is:

(1) $15,027,081.89 in damages plus pre- and post-Award interest at a rate of 5% compounded annually from October 16, 2014 until the date of payment, and

(2) $3,137,887.17 in arbitration and legal costs plus post-award interest at a rate of 5% compounded annually from the date of the award until the date of payment.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  June 14, 2022